# Torre, Lentz, Gamell, Gary & Rittmaster, LLP
## Attorneys at Law

100 Jericho Quadrangle, Suite 309
Jericho, New York 11753-2702

Telephone: (516) 240-8900
Facsimile: (516) 240-8950

Robert Beau Leonard
rleonard@tlggr.com

December 5, 2013

Hon. Robert E. Gerber
United States Bankruptcy Judge
One Bowling Green
New York, NY  10004-1408

        Re:    In re Tucci Equipment Rental Corp., et ano.
                  Chapter 11 Case No. 13-12094-reg
                  Surety's Position Statement on Procedural Issues

Dear Judge Gerber:

      As attorneys for First National Insurance Company of America ("the Surety"), we are writing pursuant to the Court's request, at the hearing on November 19th, to express the Surety's position regarding the possibilities for (a) a successful chapter 11 reorganization by the debtors-in-possession; (b) the possible appointment of a chapter 11 trustee; (c) a possible conversion to a chapter 7 liquidation; or (d) a possible dismissal of one or both of the bankruptcy petitions.

      In formulating and expressing a position on the part of the Surety, we have first attempted to reach a consensus by communicating with counsel for the Debtors, the City, and CapitalOne, and our views have to some extent been shaped by their comments. Nevertheless, we are writing on behalf of our client alone, *i.e.*, we are expressing only the position of the Surety, no one else.

Summary of the Surety's Position

      The Surety would like to see Tucci remain in business as a debtor-in-possession attempting to reorganize and succeed as a contractor and employer. In order to do that, Tucci will presumably need to remain in good standing with the City of New York in regard to its "Vendex" status (which is essentially a contractor's license to do business with the City), pay its employees and its insurance, and be responsive to requests for information from the Bankruptcy Court, the City, and the Surety. Tucci also will need cash flow and a plan of reorganization.

      However, for Tucci to remain in good standing with the City (and with the Surety), Tucci will also need to arrange, or at least permit, the completion of the renovation work remaining to be performed in the two City Parks, for which the Surety issued performance bonds. That work has been stopped by Tucci's bankruptcy and the associated potential for disputes concerning the automatic stay, while Tucci remains the contractor of record. A stipulation under which the work would resume has been drafted, negotiated, and approved by the Surety, the City, and Tucci's lending bank (CapitalOne), but not by Tucci's counsel (which has requested changes that

TORRE, LENTZ, GAMELL, GARY & RITTMASTER, LLP

Hon. Robert E. Gerber<br>
December 5, 2013<br>
Page 2 of 4

the Surety has rejected). Conceptually, the stipulation seeks court approval for the Surety to arrange for completion of the bonded work in accordance with its rights under the indemnity agreements, while also avoiding a declaration of default by the City that would cost Tucci its Vendex status, and thus its future as a public works contractor.

If a stipulation permitting the Surety to arrange for completion of the bonded Parks work is not signed shortly, the Surety intends to re-calendar its previously filed cross-motion seeking relief from the stay (Document #30), to which it (and potentially the City) may add requests for further judicial relief requiring the Debtors to assume or reject certain contracts, and/or to abandon the alleged accounts receivable relating to the bonded Parks contracts, and/or for declaratory relief concerning the extent of the Surety's rights under its indemnity agreements in a bankruptcy context. However, before seeking such relief the Surety may be inclined to await possible appointment of a chapter 11 trustee, whereupon it would try to reach a similar surety stipulation lifting the stay, with the trustee. The Surety seeks to have this process resolved in time for the Spring planting season (March 1 to May 31).

Regarding the other two potential options mentioned by the Court, the Surety would prefer there not to be a conversion to a chapter 7 liquidation at this time, and would prefer the bankruptcy petitions not be dismissed. The Surety would prefer to see Tucci successfully reorganize and continue in business. Ultimately, we do not think these two bankruptcy cases are particularly unusual or difficult, other than the Debtors' very serious dual challenges of getting money from the City at all, and of getting money soon enough to continue to operate. Anthony Martucci's commitment and passion have been evident in the court hearings to date, and the fact that he and his company have been doing business with the City for at least 10 years, and that the City has not actively sought to declare Tucci in default despite its financial difficulties, speaks volumes as to whether he should be permitted to try to continue to reorganize his company.

The Surety's Interests and Goals

The Surety's primary interests and goals are (1) arranging completion of the landscaping work in Washington Square Park and the Bronx Blvd. Park (with a properly licensed nursery subcontractor, and with insurance in place, which Tucci has not yet confirmed it has paid, pursuant to the cash collateral order); (2) resolving the lawsuit by Kelco Construction Inc. (a subcontractor Tucci terminated when a large number of trees and shrubs died), in a manner consistent with the City's determinations as to which portions of Kelco's work were defective and which portions were accepted; (3) collecting the contract balances from the City on the bonded projects, to reimburse the Surety's losses (and filing a general unsecured claim for any losses remaining unreimbursed, plus the Surety's reimbursable expenses as per the indemnity agreements); (4) enabling Tucci to remain in business and to pursue and collect such other monies as Tucci is entitled to receive from the City of New York and the City of Yonkers, so as to maximize the Surety's own distribution under its remaining general unsecured claim, if any;

Torre, Lentz, Gamell, Gary & Rittmaster, LLP

and (5) preserving and exercising the Surety's rights against the non-debtors who also signed indemnity agreements in favor of the Surety, including Anthony Martucci's ex-wife and brother (and sister-in-law), and 336 Barretto Street LLC, which owns the building at that address in the Bronx (housing Tucci's operations). The proposed surety stipulation was drafted with these interests and goals in mind, in a manner which the Surety believes is consistent with its rights under its indemnity agreements and applicable law, including the Bankruptcy Code, as further discussed in the Surety's previously-filed cross-motion (Document #30), citing authorities.

Tucci's Status as Debtor-in-Possession

To reorganize, Tucci will need cash flow to operate. Tucci's only operating report was filed on September 11, 2013, and listed over $1,200,000 of alleged "receivables". However, some of those items reportedly had not even been "billed" (which Tucci has said is because the City had never registered the contracts).

More recently, Tucci has engaged new construction counsel. Nevertheless, we have not seen any indication as to when Tucci might receive any further payments from the City (or from Tucci's one other listed customer, the City of Yonkers). A clause in its new construction counsel's engagement agreement suggests that before such counsel will appear in any litigation with the City (presumably including the two actions Tucci commenced against the City in state court, which have recently been consolidated), such counsel will require a retainer deposit in an amount not yet negotiated, which may place even more pressure upon the Debtors' cash flow.

Tucci is a tenant in the Barretto Street building owned by the LLC, of which Anthony Martucci asserts he is the sole member. There is reportedly significant equity available in the building, said to exceed $500,000, over and above the mortgage held by secured creditor Valley National Bank (the "Mortgagee Bank"). That equity could be significant to the Debtors' reorganization, or the building could be rented out for immediate income. Incidentally, the Surety has a General Agreement of Indemnity signed by the Barretto Street LLC, which is not in bankruptcy, and thus the Surety has a direct interest in the proceeds of any foreclosure or other disposition of the building. While this latter factor might actually militate toward the Surety preferring a chapter 7 or 11 trustee taking control of the building (and controlling the LLC's expenditures and obligations), the Surety is willing for now to trust the Debtors to honor their obligations to the Bankruptcy Court and to act responsibly in relation to that asset, provided the Debtors are moving toward an achievable reorganization.

However, that window of opportunity is closing fast, as the Spring planting season approaches without a stipulation permitting the Surety to arrange for the resumption of the Parks work. Without a surety stipulation so ordered by the Court, or a comparable court order, or a declaration of default by the City which terminates Tucci as the contractor of record, or a sudden influx of cash into Tucci's coffers, it seems clear that the work will not be resuming — a highly

TORRE, LENTZ, GAMELL, GARY & RITTMASTER, LLP

Hon. Robert E. Gerber<br>
December 5, 2013<br>
Page 4 of 4

undesirable situation for the Surety in a world in which uncertainty and changing rules often increase the costs of construction (such as, by way of example, the Parks' Department's 2013 adoption of new rules for the planting of trees, which may have caused an increase in the cost of completing the unfinished Kelco work by as much as 20%). Thus, the Surety is anxious to get this matter resolved, and lock in the completion work prices, "ASAP".

Conclusion

     Accordingly, in order of preference, the Surety would like to see Tucci continue in business as a debtor-in-possession under the arrangements set forth in the proposed surety stipulation, or alternatively as a chapter 11 debtor under the administration of a chapter 11 trustee. While there may also be some benefit to a possible conversion to a chapter 7 liquidation (of one or both of these jointly-administered cases), the Surety would prefer that the bankruptcy petitions not be dismissed in either of these two cases at this time.

Respectfully submitted,<br>
<br>
Robert Beau Leonard

cc: All counsel via e-filing